UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES M. LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00640-JRS-DLP |
| | ) |
| PAUL TALBOT, et al. | ) |
| | ) |
| Defendants. | ) |

**Order Denying Motion for Summary Judgment
and Directing Further Proceedings**

Plaintiff James Lewis, an Indiana inmate, brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the defendants have denied him constitutionally inadequate medical care for his painful trigger thumb condition. The defendants move for summary judgment arguing that Mr. Lewis failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed this lawsuit. For the following reasons, the motion for summary judgment is denied and the defendants are directed to show cause why summary judgment should not issue in favor of Mr. Lewis on the affirmative defense.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II. Facts

The Indiana Department of Correction ("IDOC") maintains an Offender Grievance Process. *See* Dkt. 40-3 ¶ 5. The purpose of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement, including complaints of inadequate medical care. *Id.*

At the time of Mr. Lewis's complaints in this case, the Grievance Process required the offender to initiate the Process by submitting an informal grievance. *Id.* ¶ 7.[1] After submitting an informal grievance, an inmate must first file a formal grievance by submitting a grievance form to the grievance specialist. *Id.* ¶ 6. A formal grievance must be submitted within ten business days of the date giving rise to the complaint. Dkt. 40-1 p. 9.

If it is not submitted within ten business days, the offender grievance specialist may return it. Dkt. 40-1 p. 10. Further, the Grievance Process provides, "The Offender Grievance Specialist has the discretion to consider a grievance that does not conform to the rules if there is good cause for the violation. An example of good cause is an inability to comply for reasons outside of the offender's control." *Id.* If a grievance is returned, it is the offender's responsibility to "make the necessary revisions to the grievance form and to return the revised form to the Offender Grievance Specialist within five (5) business days from the date it is returned." *Id.*

---

[1] That step has since been eliminated. *Id.*

The Grievance Process goes on to provide that if, after receipt of the grievance response, the problem is not resolved to the inmate's satisfaction, he must appeal the decision by submitting a Level 1 grievance appeal to the Warden. *Id.* p. 12. If, after receipt of the appeal response, the inmate is still dissatisfied, or no response is received within the time frame, he may appeal to the Department Offender Grievance Manager. *Id.*

The defendants state that there is no record that Mr. Lewis filed any informal grievances or formal appeals related to his claims in this case. Mr. Lewis states that he submitted a request for interview about his thumb on October 13, 2019. Dkt. 44 p. 5. Mr. Lewis filed a formal grievance on November 2, 2019. *See* dkt. 40-2. The grievance stated:

> On or around April of 2019, I noticed and developed pain in my right thumb. Next my thumb started to click, like it was popping in and out of socket. This went on for 5 months, while being told by Dr. Talbot (Facility Doctor) to wear a splint/brace every 30 days and take Tylenol. I was also told I would be sent out every month to receive a cortisone shot, but at that time him and his colleagues felt there was nothing wrong seriously and the brace would heal my thumb. I was finally sent out in Sept. of 2019 after [] complaining more and more. After receiving shot from outside orthopedic doctor, I was told I would be brought back for a follow-up to see if shot worked with inflammation. After coming back for follow-up visit on 10-21-19, I was told shot wasn't successful and that the brace I was ordered to wear during prolonged period was not designed to heal/fix, so it was wrong for Dr. Talbot to advise me that it was, so that he wouldn't have to send me out for "real" professional treatment. Also, at this 2nd visit, I was told I needed reconstructive surgery on my right thumb, and I would be brought back for consultation with hand surgeon, and had I been sent out months ago, I would not need surgery.

Dkt. 40-2. For relief, Mr. Lewis requested, "proper treatment moving forward." *Id.*

The grievance was returned as untimely. *Id.* The explanation on the return of grievance form stated: "You have submitted the form too late and have not shown any good reason for the delay…." *Id.*

### III. Discussion

The defendants seek summary judgment arguing that Mr. Lewis failed to exhaust his available administrative remedies because he did not file an informal grievance or a grievance appeal as required by the Grievance Process. The defendants also argue that Mr. Lewis's formal grievance was filed too late according to the Grievance Process.

A. *Applicable Law*

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 39, 397 (7th Cir. 2004). It is the defendants' burden to establish that the administrative process was available. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

B. *Mr. Lewis's Use of the Grievance Process*

The defendants first argue that Mr. Lewis failed to exhaust his available administrative remedies because he did not file an informal grievance. But Mr. Lewis contends that he filed an informal request for interview on October 13, 2020. In fact, his formal grievance contains a notation stating, "As of 11-2-19, have not gotten a response back from medical about my informal grievance." Dkt. 402- p. 14. And even if he did not, his formal grievance was not rejected for this reason. *Cf. Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("When a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.") (*citing Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

The defendants next argue that Mr. Lewis's formal grievance was untimely because the incident it challenges took place in April of 2019. But that is too cramped a reading of Mr. Lewis's grievance. While the grievance states that Mr. Lewis began experiencing pain in his thumb in April of 2019, it goes on to explain the course of care he experienced for his pain through at least September of 2019. *Id.* Further, Mr. Lewis requested in that grievance, "proper treatment moving forward." *Id.* It is a reasonable inference from this request that Mr. Lewis not only was grieving the alleged improper treatment he had received in the past, but also the treatment he was receiving at the time he filed the grievance. Because the grievance indicates that his condition was ongoing, it should not have been rejected as untimely. *See Ellis v. Vadlamudi*, 568 F.Supp. 2d. 778, 783-84 (E.D. Mich. 2008) ("a grievance that identifies the persistent failure to address [those conditions] must be considered timely as long as the prison officials retain the power to do something about it."); *see also Meeks v. Suliene*, No. 11-C-0054, 2012 WL 5985482, at *3 (E.D. Wis. Nov. 29, 2012) (finding that a grievance filed in October of 2010 was sufficient to exhaust available

administrative remedies for all claims relating to an ongoing condition, explaining "Meeks' claims of deliberate indifference should not be viewed as isolated incidents, but as an allegation of inadequate medical care over the course of years by multiple prison healthcare staff members.").

In reply, the defendants argue that if Mr. Lewis believed his grievance was returned improperly, it was his responsibility "to take the next step in the grievance process." Dkt. 45 p. 4. Because he did not re-submit his grievance, the defendants argue that he failed to take that next step and therefore failed to exhaust his available administrative remedies. But the Grievance Process does not provide that an offender should file a second grievance when the first grievance was rejected. Further, the rejection of his grievance as untimely likely, and understandably, left Mr. Lewis with the impression that further grievances also would be rejected. As the Supreme Court has held, an administrative procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). Thus, because Mr. Lewis's grievance was rejected as untimely when it was not, the Grievance Process was rendered unavailable to him. *See Dole*, 438 F.3d at 809.

Finally, the defendants argue for the first time in their reply that Mr. Lewis did not exhaust his available administrative remedies against defendant Dr. Buckley specifically before Mr. Lewis filed this lawsuit. Mr. Lewis stated in response to the motion for summary judgment that he filed an informal grievance against Dr. Buckley on January 21, 2020, and a formal grievance on January 29, 2020. Dkt. 44 p. 8. The defendants argue that there is no record of these grievances. But whether Mr. Lewis submitted these grievances is irrelevant because he had already grieved the treatment for his trigger thumb, and he is not required to file multiple, successive grievances regarding the same issue. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

6

In short, the record before the Court shows that Mr. Lewis was impeded in completing the Grievance Process when his grievance was rejected as untimely and that administrative remedies were therefore made unavailable to him.

### IV. Conclusion and Rule 56(f) Notice

For the foregoing reasons, the defendants' motion for summary judgment on the affirmative defense that Mr. Lewis failed to exhaust his available administrative remedies, dkt. [38], is **denied**. Moreover, the current record before the Court shows that Mr. Lewis is entitled to summary judgment on the defendants' affirmative defense of exhaustion. Therefore, **pursuant to Rule 56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in the plaintiff's favor on this issue**. The defendants have **through October 9, 2020**, in which to respond to the Court's proposal. Alternatively, the defendants may withdraw his affirmative defense by this date.

**IT IS SO ORDERED.**

Date: 9/21/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES M. LEWIS
964417
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel

7